# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | C/A No. 14-04795-DD |
| Abbott Simon Estrin and Deborah Leah Estrin, | Adv. Pro. No. 15-80039-DD |
| Debtors. | Chapter 7 |
| Twin City Fire Insurance Company, | **ORDER** |
| Plaintiff, | |
| v. | |
| Abbott Simon Estrin and Deborah Leah Estrin, a/k/a Deborah Perry Estrin, | |
| Defendants. | |

This matter is before the Court on the complaint filed by plaintiff Twin City Fire Insurance Company ("Plaintiff") on March 6, 2015.[1] Defendants Abbott Simon Estrin ("Mr. Estrin" or "A. Estrin") and Deborah Leah Estrin ("Mrs. Estrin" or "D. Estrin") (collectively, "the Estrins") filed an answer to the complaint on April 1, 2015.[2] Jurisdiction for this proceeding is premised upon 28 U.S.C. §§ 1334 and 157(a). Venue is proper under 28 U.S.C. § 1409. This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

Plaintiff's basic theory in this proceeding is that, while employed in a human resources position at Home Serve USA Corporation ("HSUSA"), Mrs. Estrin was responsible for filling job openings and in that capacity, obtained resumes and applications from candidates who submitted applications for open positions to HSUSA directly. Mrs. Estrin then forwarded that information

---

[1] Docket No. 1.

[2] Docket No. 5.

to Mr. Estrin, who posed as a recruiter, contacted the candidates, and presented them to HSUSA. After HSUSA hired a candidate, Mr. Estrin, acting in concert with another recruiter, submitted invoices for recruiting commissions on the other recruiter's letterhead.  Mrs. Estrin approved payment on the invoices and ensured they were actually paid.  Once HSUSA paid the invoices, the recruiter assisting the Estrins retained a portion of the payment and remitted the remainder to Fitzgerald Addison Group, LLC ("Fitzgerald Addison"), a recruiting firm wholly owned by the Estrins.  Plaintiff alleges that through this scheme, HSUSA paid over $150,000.00 for recruiting commissions that were not earned.  After the scheme was discovered, Plaintiff paid HSUSA its losses pursuant to an insurance policy held by HSUSA insuring against, among other things, employee theft.  Plaintiff is subrogated to the rights of HSUSA.  Plaintiff alleges that the loss incurred as a result of the Estrins' conduct is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).[3]  The Estrins generally deny the scheme.

Plaintiff originally commenced an action against the Estrins and other defendants[4] on July 12, 2013 in the United States District Court for the Central District of California, asserting causes of action for conspiracy to commit fraud, fraud, and unfair business practice (the "California Action").  After the filing of the Estrins' bankruptcy case and this adversary proceeding, the California Action was transferred to the United States District Court for the District of South Carolina in April 2015.  The California Action was consolidated with this adversary proceeding upon reference from the District Court on May 28, 2015.[5]

---

[3] Further references to the bankruptcy code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[4] Thomas Spry, Thomas Paige International, Fitzgerald Addison, and the Estrins were all defendants in the California Action.  Thomas Spry and Thomas Paige International reached a settlement with Plaintiff.  California Action, District Court Case No. 2:15-cv-01663-DCN-MGB (hereinafter referred to as the California Action), Docket No. 57.  Default was entered as to Fitzgerald Addison on February 20, 2015.  California Action, Docket No. 60.  Thus, the only remaining defendants in the California Action are the Estrins.  *See* California Action, Docket No. 70.

[5] Order of Reference from District Court, Docket No. 17.

As will be more fully explained in a separate Report and Recommendation the Court will enter in this adversary proceeding, the Estrins requested a jury trial[6] and have not expressly consented to this Court conducting that jury trial.  As a result, the issue at trial was limited to the dischargeability of any debt owed by the Estrins to Plaintiff.  The Court did not reach the issue of the amount of the debt or any of the causes of action asserted in the California Action.

For the reasons set forth below, the evidence presented by Plaintiff at trial was sufficient to prove the facts and the non-dischargeability causes of action asserted by Plaintiff in this case. The Court now issues the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052.[7]

## **FINDINGS OF FACT**

1.      From August 20, 2008 to August 12, 2010, Mrs. Estrin worked for HSUSA.[8]  Mrs. Estrin originally worked as an independent contractor and was subsequently offered permanent employment in October 2008.[9]  Mrs. Estrin's original title was Director of Human Resources, and she was later promoted to Vice President of Human Resources.[10]

2.      The Estrins together owned a 100 percent interest in Fitzgerald Addison, which is a recruiting firm.[11]  Fitzgerald Addison was originally organized in South Carolina in 2001, and documentation was subsequently filed for Fitzgerald Addison to transact business in Florida in

---

[6] Docket No.  63.  The Court denied the Request for Jury Trial because Plaintiff indicated at the pre-trial conference that the issue for trial was limited to whether the debt was non-dischargeable, and no jury trial right exists with respect to non-dischargeability proceedings.  *See* Docket No. 65.

[7] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[8] Amended Joint Pre-Trial Order, Docket No. 59, ¶ 2.

[9] Exhibits 58, 59.

[10] Amended Joint Pre-Trial Order, Docket No. 59, ¶ 2; Exhibit 59; Dep. Alexander, 7:3 - 7:23; 8:1 - 8:11.

[11] Amended Joint Pre-Trial Order, Docket No. 59, ¶ 3.

2007.[12]  The organization paperwork filed in South Carolina listed Mrs. Estrin as the registered

agent for Fitzgerald Addison, and the paperwork filed in Florida listed both Estrins as managing

members or managers.[13]    According to Mrs. Estrin, the Estrins have always been the only

employees of Fitzgerald Addison.[14]  At the time Mrs. Estrin applied for a position with HSUSA,

she was an owner and employee of Fitzgerald Addison.[15]

3.      To initially obtain her position at HSUSA, Mrs. Estrin completed a job

application.[16] On the application, Mrs. Estrin listed previous experience in several different human

resources roles, including a position with Fitzgerald Addison.[17]  She described her position with

Fitzgerald Addison as a "senior consultant" and indicated that her employment ended in November

2007 because she left to work on another project.[18]  Despite her testimony that Fitzgerald Addison

never had employees other than the Estrins, Mrs. Estrin listed on her HSUSA job application that

her supervisor at Fitzgerald Addison was "Gregory Sanchez, Director."[19]

4.      Mrs. Estrin's responsibilities at HSUSA were essentially the same in both her

position as Director of Human Resources and as Vice President of Human Resources.[20]  One such

responsibility was to fill job openings at HSUSA.[21]   In connection with this responsibility, Mrs.

Estrin was entrusted with a budget and had broad discretion in how to allocate the budget to various

---

[12] Id. at ¶¶ 4, 5.

[13] Amended Joint Pre-Trial Order, ¶¶ 4, 5, 6.

[14] Dep. D. Estrin, 16:2 - 16:24, March 6, 2014.

[15] Dep. D. Estrin, 112:9 - 112:14. July 7, 2014.

[16] Exhibit 56.

[17] Id.

[18] Id.

[19] Id.

[20] Dep. Alexander, 8:4 - 8:11.

[21] Dep. Alexander, 8:23 - 9:6.

recruiting activities, including making decisions about when to utilize external recruiting resources.[22] Mrs. Estrin's use of the recruiting budget was subject to oversight, but that oversight was limited to ensuring that recruiting spending did not exceed a certain amount.[23]

5.       HSUSA required Mrs. Estrin to comply with a Code of Business Conduct.[24] The Code advised employees to avoid conflicts of interest between their own interests and HSUSA's, and required them to "declare, on an annual basis, any financial interest in companies or organisations [sic] having a business relationship … [with] HomeServe."[25]  Employees were required to complete a separate form listing any interests in organizations with which HSUSA had a business relationship.[26]

6.       Mrs. Estrin never disclosed her interest in Fitzgerald Addison to HSUSA.[27]  To the contrary, at least once during her employment at HSUSA, Mrs. Estrin completed the required form stating that she had no interest in any organization with which HSUSA had a business relationship.[28]  Mrs. Estrin testified that she never disclosed her interest in Fitzgerald Addison because Fitzgerald Addison was never given any assignments by HSUSA.[29]

7.       Nicholas Alexander, executive vice president of HSUSA,[30] testified that Mrs. Estrin's disclosure of her interest in Fitzgerald Addison would have prompted HSUSA to

---

[22] Dep. Alexander, 8:23 - 13: 13.

[23] Dep. Alexander, 12:2 -12:25.

[24] Exhibit 60.

[25] Exhibit 60, ¶ 12.

[26] Exhibits 60, 61.

[27] Amended Joint Pre-Trial Order, Docket No. 59, ¶ 7.

[28] Exhibit 61.

[29] Dep. D. Estrin, 120:1 - 120:12, July 7, 2014.

[30] Mr. Alexander performed the HSUSA internal investigation into Mrs. Estrin's activities while he was transitioning from chief financial officer to executive vice president.

immediately "have a thorough conversation with Deborah Estrin to fully explore the nature and appropriateness of those relationships."[31] Further, Mr. Alexander stated that if HSUSA was aware of Mrs. Estrin's interest in Fitzgerald Addison, it would not have "approved her use of HSUSA funds to pay through a third party entity to an entity owned by her husband."[32]

8.      According to Mrs. Estrin, at some point during her employment at HSUSA, Mr. Estrin submitted a proposal for Fitzgerald Addison to perform services for HSUSA.[33] However, Mrs. Estrin did not disclose her ownership interest in Fitzgerald Addison in connection with that proposal.[34]

9.      Thomas Spry is the CEO and principal of Thomas Paige and Associates ("Thomas Paige"), also a recruiting firm.[35] Thomas Paige has also done business as Thomas Paige International and Tom Spry and Associates.[36]

10.     At some point soon after Mrs. Estrin began working for HSUSA, Mr. Estrin approached Mr. Spry about helping Mrs. Estrin fill open positions at HSUSA.[37] Mr. Estrin and Mr. Spry entered in an arrangement pursuant to which Mr. Spry would assist in finding candidates.[38] According to the terms of the parties' arrangement, if Mr. Spry found a candidate to fill the position, Mr. Spry and Mr. Estrin would evenly split the recruiting commission.[39] However, if Mr. Estrin found a candidate to fill the position, Mr. Spry would receive 20 percent

---

[31] Dep. Alexander, 25:15 - 25:22.

[32] *Id.*, 25:23 - 26:3.

[33] Dep. D. Estrin, 117: 20 - 118: 13, July 7, 2014.

[34] *Id.*

[35] Amended Joint Pre-Trial Order, Docket No. 59 at ¶ 9.

[36] Dep. Spry, 8:17 - 8:21; 9:11 - 9:21, January 21, 2014.

[37] Dep. Spry, 16:6 - 16:10, September 22, 2015.

[38] Dep. Spry, 16:6 - 16:20, September 22, 2015.

[39] *Id.*

and Mr. Estrin would receive 80 percent.[40]  The parties also agreed that Thomas Paige would bill HSUSA for the recruiting commissions.[41]

11.     HSUSA paid for and maintained profiles on various online job boards such as Monster.com, TheLadders.com, and CareerBuilder, and often directly posted job openings on those job boards.[42]  As a result, candidates did not have to work with a recruiter, but could submit applications to HSUSA directly.[43]

12.     On several occasions, by e-mail, Mrs. Estrin provided her log-in information for the online job boards to Mr. Estrin.[44]  Additionally, on several occasions, Mrs. Estrin forwarded to Mr. Estrin applications or resumes submitted directly to HSUSA by candidates in response to HSUSA's online job board postings.[45]

13.     According to Mr. Spry, he commonly used false names in his recruiting activities to get past telephone call screening by secretaries or other "gatekeepers."[46]  Pseudonyms he commonly used included Victor Vega and Scott Johnson.[47]

14.     On several occasions, candidates for HSUSA positions were contacted by someone using the name Scott Johnson.[48]  Mr. Spry did not recall using the name Scott Johnson in connection with any HSUSA recruiting efforts or giving anyone else permission to use the name,

---

[40] *Id.*

[41] *Id.*,18:15 - 19:4.

[42] Dep. D. Estrin, 129:25 - 130:23, July 7, 2014.

[43] *Id.*, 133:5 - 133:25.

[44] Exhibits 90, 93, 99.

[45] Exhibits 70, 71.

[46] Dep. Spry, 38:13 - 40:7, January 21, 2014.

[47] *Id.*; Dep. Spry, 25:6 - 25:12, September 22, 2015.

[48] Exhibits 69, 74, 77, 78.

but did recall telling Mr. Estrin he sometimes used the Scott Johnson pseudonym.[49]  The telephone number used by Scott Johnson in his communications with candidates was a number maintained at one time by Mr. Estrin.[50]

15.    After candidates were hired by HSUSA, invoices for recruiting commissions were submitted to HSUSA on Thomas Paige letterhead.[51]

16.    Although the identity of the person submitting each individual invoice to HSUSA on Thomas Paige letterhead is not completely clear, at one point Mr. Spry provided by email, at Mr. Estrin's request, a copy of Thomas Paige letterhead to Mr. Estrin so that, according to Mr. Spry, Mr. Estrin could submit an invoice to HSUSA.[52] Mr. Spry further testified that he recalled receiving checks from HSUSA for invoices he did not submit.[53]  Upon review of specific examples of invoices submitted to HSUSA on Thomas Paige letterhead, Mr. Spry stated that he believed those invoices were prepared by Mr. Estrin.[54]

17.    After they were submitted to HSUSA, the payment of these invoices was approved and facilitated, at least in part, by Mrs. Estrin.[55]

18.    Once Thomas Paige received payments on the invoices submitted to HSUSA, Mr. Spry retained his portion of the funds, pursuant to his arrangement with Mr. Estrin, then remitted

---

[49] Dep. Spry, 25:17 - 25:23, September 22, 2015; Dep. Spry, 40:25 - 41:2, January 21, 2014.

[50] Dep. D. Estrin, 150:8 - 150:25, July 7, 2014.

[51] Exhibits 25, 26, 27, 35, 79, 84.

[52] Exhibit 112; Dep. Spry, 42:21 - 43:22, September 22, 2015.

[53] Dep. Spry, 43:23 - 44:2, September 22, 2015.

[54] Dep. Spry, 43:1 - 44:2, 51:2 - 52:11, 53:18 - 54:3; 56:10 - 56:24, 57:4 - 57:10, 70:4 - 70:18, 70:23 - 71:8, September 22, 2015.

[55] Dep. D. Estrin, 61:22 - 62:14; 66:12 -  67:1; 70:13 - 70:25, March 6, 2014; Dep. D. Estrin, 144:3 - 144:18; 167:1 - 167:8; 176:10 - 176:23; 179:7 - 180:12; 187:1 - 187:15; 189:25 - 190:13, July 7, 2014; Exhibits 63, 65, 66, 75, 76, 79, 84.

a check payable to Fitzgerald Addison for the remainder.[56]  On at least one occasion, Mrs. Estrin endorsed a check from Thomas Paige made payable to Fitzgerald Addison.[57]

19.     The arrangement between Mr. Estrin and Mr. Spry, and Mrs. Estrin's involvement in their recruiting activities, is illustrated by specific evidence concerning candidates hired by HSUSA.  In October 2008, Mr. Estrin forwarded Mr. Spry a copy of a resume for a candidate named Lindy Smiley and instructed him to email the resume to Mrs. Estrin on Thomas Paige letterhead.[58]  Mr. Estrin also instructed Mr. Spry to blind copy him on the email to Mrs. Estrin.[59]  On November 5, 2008, Mr. Estrin again emailed Mr. Spry, requesting that he resend the resume to Mrs. Estrin on Thomas Paige letterhead.[60]  Mr. Estrin stated that the candidate's start date would be November 17, indicated that he would send Mr. Spry billing instructions, and stated, "You [sic] commission for moving paper will be $4k.  Expect more to come from other positions."[61]  An invoice was submitted to HSUSA on Thomas Paige letterhead on December 1, 2008 in the amount of $13,000.00 for the placement of Lindy Smiley.[62]  HSUSA issued a check for payment of that invoice on December 4, 2008.[63]

20.     Another instance of similar recruiting activities involving the Estrins and Mr. Spry occurred when HSUSA had an open vice president of operations position.  On February 17, 2010, Lou King applied for the vice president of operations position on Monster.com.[64]  On February

---

[56] Dep. Spry, 36:10 - 36:17; 69:22 - 70:2, January 21, 2014.

[57] Exhibit 110.

[58] Exhibit 9.

[59] *Id.*

[60] Exhibit 11.

[61] *Id.*

[62] Exhibit 14.

[63] Exhibit 15.

[64] Exhibit 71.

25, 2010, Mrs. Estrin emailed Lou King directly, sending her contact information.[65]  On February

26, 2010, Mrs. Estrin forwarded Lou King's resume to Mr. Estrin at aestrin103@aol.com.[66]  On

March 10, 2010, an individual identifying himself as Scott Johnson emailed Lou King from

caprisingltd@aol.com, regarding submitting expense reimbursement requests to Mrs. Estrin,

stating, "All the pieces are coming together," and concluding the email with, "You know how to

find me."[67]  On March 11, 2010, Mr. Estrin emailed Mr. Spry stating that a candidate had been

placed in the vice president of operations position and that Mr. Spry would receive a 20 percent

commission as a result of the placement.[68]  Although Mr. Spry did not place Lou King in the vice

president of operations role,[69] HSUSA paid Thomas Paige recruiting commissions in the total

amount of $48,750.00 for the placement of Lou King.[70]

21.    In March 2010, HSUSA had an opening for a chief financial officer ("CFO").  On

March 16, 2010 at 2:47 p.m., Mrs. Estrin sent an email to caprisingltd@gmail.com, stating that

she had been made aware that someone using that email address had been engaged in recruiting

activities to locate CFO candidates, advising that such activities were not authorized, and

demanding that such activities cease immediately.[71]  At 3:07 p.m., Mr. Estrin, from his email

address AEstrin103@aol.com,[72] sent an email to Mrs. Estrin, stating, "please explain.  Regarding

CFO, I don't think it is posted.    What is the problem?"[73]  Mrs. Estrin responded to

---

[65] Exhibit 72.

[66] Exhibit 73.

[67] Exhibit 74.

[68] Exhibit 49.

[69] Dep. Spry, 57:11 - 58:22, September 22, 2015.

[70] Exhibit 76; Dep. Spry 60:15 - 61:5, September 22, 2015.

[71] Exhibit 96.

[72] *See* Dep. A. Estrin, 170:24 - 171:1, July 8, 2014.

[73] Exhibit 105.

AEstrin103@aol.com at 3:13 p.m., stating, "Execunet gave JK Victor Vega as the name of the person who posted the job that was very specific -- brought into the office by Julie — clearly identifiable as us.  Scott Johnson's name also came up."[74] Someone then responded to Mrs. Estrin from caprisingltd@gmail.com at 3:16 p.m. stating that he or she was not actively advertising for the position.[75]

22.     The March 16, 2010 email exchange, combined with the fact that Mrs. Estrin ended email communications to caprisingltd@gmail.com with the phrase "Love you!"[76] as she often did with email communications to Mr. Estrin at his AEstrin103@aol.com address,[77] is sufficient to support, and the Court finds, that Mr. Estrin was the individual using the caprisingltd@gmail.com email address.

23.     HSUSA conducted an investigation into Mrs. Estrin's activities and terminated her for cause on August 12, 2010.[78]

24.     In his depositions, Mr. Estrin repeatedly testified that he had no recollection or no knowledge regarding the recruiting activities involved in this case, including the agreement with Thomas Paige regarding recruiting commissions, the identity of individuals posing as "Scott Johnson," "Victor Vega," or "Caprising Ltd" and the submission of invoices to HSUSA.[79]  Both Mr. and Mrs. Estrin testified that they were not aware of each other's business activities -- specifically, Mrs. Estrin maintained that she had no knowledge regarding Mr. Estrin's arrangement

---

[74] *Id.*

[75] Exhibit 96.

[76] Exhibit 94.

[77] Exhibit 73, 83, 99, 100.

[78] Exhibit 104.

[79] *See* Dep. A. Estrin, 38:3 - 38:16; 72:20 - 73:5; 81:2 - 81:19; 89:9 - 89:14; 110:8 - 110:10, March 6, 2014. *See also* Dep. A. Estrin 156: 3 - 156:4; 171:14 - 172:23; 217:4 - 217:25; 220:7 - 222:4, July 8, 2014.

with Mr. Spry to place candidates at HSUSA and his other recruiting activities.[80]  This testimony is not sufficient to overcome the direct testimony of Mr. Spry, who testified that the parties did in fact engage in the scheme alleged by Plaintiff.

25.    According to Mr. Spry, to the best of his recollection, Thomas Paige did not place candidates with any companies other than HSUSA during the 2008-2010 time frame.[81]

26.    HSUSA held an insurance policy with Plaintiff, effective from December 31, 2009 to March 31, 2011.[82]  The policy insured against, among other losses, losses occurring as a result of employee theft.[83]  After Mrs. Estrin's termination, HSUSA submitted a claim under the policy and, after applying the deductible, Plaintiff paid HSUSA a total of $97,970.77.[84]

27.    On or about July 26, 2012, Plaintiff and HSUSA entered into a Full Release and Assignment, pursuant to which HSUSA assigned all of its rights in connection with the employee theft claim to Plaintiff.[85]

28.    On July 12, 2013, Plaintiff commenced the California Action.[86]

29.    On August 25, 2014, the Estrins filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of South Carolina, which stayed the California Action.[87]

30.    Plaintiff filed this adversary proceeding on March 6, 2015.[88]

---

[80] *See* Dep. A. Estrin, 64:18 - 66:6; 101:6 - 101:18, March 6, 2014.  *See also* Dep. D. Estrin, 162:13 - 163:9; 185:21 - 186:19; 210:20 - 211:13; 214:4 - 214:21; 230:14 - 230:21, July 7, 2014.

[81] Dep. Spry, 22:15 - 23:6, September 22, 2015.

[82] Exhibit 127.

[83] *See id.*

[84] *See id.*

[85] *Id.*

[86] District Court Case No. 2:15-cv-01663-DCN-MGB, Docket No. 1.

[87] Bankruptcy Case No. 14-04795-dd, Docket No. 1.

[88] Docket No. 1.

31.     The Estrins filed an answer to the Plaintiff's adversary complaint on April 1, 2015.[89]

32.     The California Action was transferred to the United States District Court for the District of South Carolina in April 2015 and referred to this Court on May 28, 2015.[90]

33.     The Court held a pre-trial conference in this proceeding on November 17, 2015, and on November 18, 2015, a trial was scheduled for January 28, 2016.[91]

34.     On January 14, 2016, the Estrins filed a Request for Continuance, requesting that the trial be continued for a period of 120 days.[92]  The Court entered an order denying the Request for Continuance on January 22, 2016.[93]

35.      On January 26, 2016, the United States District Court for the District of South Carolina received a Notice of Appeal of the Court's order denying the Request for Continuance, and transmitted the Notice of Appeal to this Court.[94]  The Notice of Appeal contained a request to stay the trial pending appeal.

36.     On January 28, 2016, Plaintiff's counsel appeared for the scheduled trial.  The Estrins did not appear.  After consideration, the Court denied the Estrins' request for a stay pending

---

[89] Docket No. 5.

[90] Order of Reference from District Court, Docket No. 17.

[91] Docket No. 60.

[92] Docket No. 70. The Court allowed Plaintiff until January 22, 2016 at 12:00 p.m. to respond to the request, which the Plaintiff timely did. Docket No. 73.

Prior to filing the Request for Continuance, in addition to their  Motion for Jury Trial, Docket No. 63, the Estrins filed a Motion for Severance, Docket No. 66. The Court denied the request for severance because the request was not timely and no facts supported severing the trial or causes of action. Docket No. 67.

[93] Order Denying Request for Continuance, Docket No. 75.

[94] Docket No. 77.

appeal, and entered an order to that effect on January 28, 2016.[95]  Trial proceeded as scheduled on January 28 and 29, 2016.

37.    In the scheduling order entered in this adversary proceeding,[96] the Court directed Plaintiff and the Estrins to submit a joint pre-trial order.   Although the Estrins participated in drafting the Amended Joint Pre-Trial Order that was filed on November 17, 2015 by making some revisions,[97] they did not raise objections to any of the witnesses or evidence Plaintiff indicated that it intended to use at trial.

38.    The only live witness that testified at trial was Patricia Grupe, a claims consultant for Hartford Fire Insurance Company.[98]  All other testimony was from portions of deposition transcripts designated by Plaintiff.   The deposition of Nicholas Alexander and the second deposition of Thomas Spry, held September 22, 2015, were taken in connection with this adversary proceeding.  All other depositions were taken in connection with the California Action, which was made a part of this adversary proceeding upon reference from the District Court.  The Estrins failed to preserve any objection to any of the evidence presented by Plaintiff, including the deposition testimony, and the evidence presented by Plaintiff was admitted at trial without objection.

## CONCLUSIONS OF LAW

### 1.  Legal Standard

"Generally, 'all legal obligations of the debtor, no matter how remote or contingent,' are potentially dischargeable in bankruptcy." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008).   Several exceptions to this general rule are set forth in 11 U.S.C. § 523.

---

[95] Order Denying Request for a Stay Pending Appeal, Docket No. 80.

[96] Docket No. 13.

[97] Docket No. 59.

[98] Plaintiff is a writing company for Hartford Fire Insurance Company.

Exceptions to discharge under section 523 are to be construed narrowly in order to protect the bankruptcy code's stated purpose of providing debtors with a fresh start. *Kubota Tractor*, 524 F.3d at 497 (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). However, courts should be "equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *Taylor v. Davis (In re Davis)*, 494 B.R. 842, 867 (Bankr. D.S.C. 2013) (quoting *Biondo*, 180 F.3d at 130). The party challenging the dischargeability of its debt bears the burden of proving the debt non-dischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Section 101(12) defines "debt" and provides that a debt is simply "liability on a claim." A claim, in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). The terms "debt" and "claim" are coextensive - ""a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."" *In re Mitchell*, 255 B.R. 345, 357 (Bankr. D. Mass. 2000) (quoting *In re Dow Corning Corp.*, 215 B.R. 346, 357 (Bankr. E.D. Mich. 1997)). These definitions reflect that a showing of non-dischargeability does not require a court to determine the exact amount of or the extent of the debt. *See First Fed. Sav. and Loan Ass'n of Rochester v. Kelley (In re Kelley)*, 163 B.R. 27, 33 (Bankr. E.D.N.Y. 1993) ("[B]ankruptcy courts may determine whether unliquidated debts are dischargeable. In doing so, bankruptcy courts should address only the issue of dischargeability and not consider the extent of damages arising from the underlying debt.") (citation omitted). Thus, the Court finds only that the Estrins owe a debt to Plaintiff under subrogation from HSUSA and that, for the reasons set forth below, the debt is non-dischargeable.

**2. Section 523(a)(2)(A)**

Section 523(a)(2)(A) provides that debts incurred "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, a false representation, or actual fraud" are non-dischargeable.  To prevail under section 523(a)(2)(A), a creditor must establish the following elements:

(1) that the debtor made a representation;
(2) that at the time the representation was made, the debtor knew it was false;
(3) that the debtor made the false representation with the intention of defrauding the creditor;
(4) that the creditor justifiably relied upon the representation; and
(5) that the creditor was damaged as the proximate result of the false representation.

*Davis*, 494 B.R. at 867 (quoting *Lind Waldock & Co. v. Morehead*, 1 F. App'x 104, 107 (4th Cir. 2001)).  *See also CoastalStates Bank v. Paxton (In re Paxton)*, Adv. No. 12-80219-dd, C/A No. 12-02509-dd, 2013 WL 5878462, at *7 (Bankr. D.S.C. Oct. 31, 2013) (quoting *Biondo*, 180 F.3d at 134) (setting forth elements of a section 523(a)(2)(A) cause of action as: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation.").  As discussed in detail below, these elements required for non-dischargeability of a debt under section 523(a)(2)(A) are met as to both Mr. and Mrs. Estrin.

a.  <u>Representations</u>

In order to establish a debt as non-dischargeable pursuant to section 523(a)(2)(A), a creditor must first establish that the debtor made an actual misrepresentation, a misrepresentation implied from the facts, or a misrepresentation by silence.  *Tompkins and McMaster v. Whitenack (In re Whitenack)*, 235 B.R. 819, 825 (Bankr. D.S.C. 1998).  "'A misrepresentation can be any words or conduct which produce a false or misleading impression of fact in the mind of another.'"

*Rimal v. Wibisono et al (In re Wibisono)*, 412 B.R. 747, 755 (Bankr. D. Md. 2009) (quoting *Guar.*

*Residential Lending, Inc. v. Koep (In re Koep)*, 334 B.R. 364, 372 (Bankr. D. Md. 2005)).

As to Mrs. Estrin, two misrepresentations are involved in this case. First, Mrs. Estrin failed

to disclose her interest in Fitzgerald Addison to HSUSA. As an employee of HSUSA, Mrs. Estrin

was required to comply with the HSUSA Code of Business Conduct. This Code required Mrs.

Estrin to disclose any financial interest she had in a company doing business with HSUSA. Despite

this requirement, Mrs. Estrin did not disclose her interest in Fitzgerald Addison to HSUSA, and in

fact affirmatively stated that she had no interest in any company having a business relationship

with HSUSA. Fitzgerald Addison was incorporated in 2001 in South Carolina and in 2007, filed

paperwork to transact business in Florida. The paperwork filed in Florida listed Mrs. Estrin as a

managing member/manager of Fitzgerald Addison. By Mrs. Estrin's own admission, at the time

she applied for a position with HSUSA, and at all times thereafter, she was an owner in Fitzgerald

Addison. The evidence indicates that Mrs. Estrin was aware Fitzgerald Addison was working with

Thomas Paige and was therefore indirectly doing business with HSUSA. Thus, Mrs. Estrin's

failure to disclose her interest in Fitzgerald Addison to HSUSA constitutes a misrepresentation of

her fidelity to HSUSA for purposes of section 523(a)(2)(A).

The second misrepresentation made by Mrs. Estrin relates to the invoices for recruiting

commissions submitted on Thomas Paige letterhead. In approving these invoices and facilitating

their payment, Mrs. Estrin represented to HSUSA her concurrence that recruiting services were

performed by Thomas Paige, and that the recruiting commissions reflected on the invoices were

earned and properly payable. This was not true. According to Mr. Spry, on several occasions he

received payment for services he did not perform — in fact, according to Mr. Spry, in several

instances he did not even submit the invoices for which Thomas Paige received payments. Thus,

Mrs. Estrin's conduct in approving the invoices submitted by Thomas Paige and in facilitating their payment also constitutes a misrepresentation for purposes of section 523(a)(2)(A).

Mr. Estrin also made a misrepresentation to HSUSA in submitting the invoices for recruiting commissions. The invoices submitted to HSUSA were on Thomas Paige letterhead, but were submitted by Mr. Estrin, not by Mr. Spry. In posing as Thomas Paige and submitting invoices for recruiting commissions to HSUSA, Mr. Estrin represented that the recruiting commissions claimed were for services actually performed by Thomas Paige. This conduct constituted a misrepresentation for purposes of section 523(a)(2)(A).

The first element is met as to both Mr. and Mrs. Estrin.

b. Knowledge of Falsity of Representations

The second element Plaintiff must establish under section 523(a)(2)(A) is that at the time of their misrepresentations, the Estrins knew the representations were false. This knowledge element can be satisfied by a showing of reckless indifference to the truth. *Visotsky v. Woolley, III (In re Woolley, III)*, 145 B.R. 830, 834 (Bankr. E.D. Va. 1991) (citing *Stamford Mun. Employees' Credit Union, Inc. v. Edwards (In re Edwards)*, 67 B.R. 1008, 1010 (Bankr. D. Conn. 1986)). "The knowledge element for exception to discharge is satisfied if the debtor's representation was known to be false or recklessly made without knowing whether it was true or false." *Woolley, III*, 145 B.R. at 834 (citations omitted).

First, as to Mrs. Estrin, at the time that she failed to disclose her interest in Fitzgerald Addison, the evidence indicates that she was aware she owned an interest in that company and that it had a business relationship involving HSUSA. Mrs. Estrin was listed on the original organization documents for Fitzgerald Addison as the registered agent for the entity. Additionally, she was listed as a managing member/manager of Fitzgerald Addison on the paperwork filed in

Florida in 2007, shortly before she began working for HSUSA.  Finally, Mrs. Estrin testified in her deposition that at the time she completed her employment application with HSUSA, she was an owner of Fitzgerald Addison, and that she never disposed of her ownership in that entity.

According to Mrs. Estrin, she did not disclose her interest in Fitzgerald Addison to HSUSA because Fitzgerald Addison had not been given any assignments by HSUSA.  However, when a proposal was submitted to HSUSA for Fitzgerald Addison to do business with HSUSA, Mrs. Estrin still did not disclose her interest in Fitzgerald Addison.  Further, Mrs. Estrin's endorsement appears on one of the checks from Thomas Paige to Fitzgerald Addison for a portion of recruiting commissions, indicating that she was aware Fitzgerald Addison was, at least indirectly, doing business with HSUSA. Plaintiff has established that at the time Mrs. Estrin represented to HSUSA that she did not own an interest in any entity that had a business relationship with HSUSA, she had the requisite knowledge that the representation was false.

Mrs. Estrin also possessed the requisite knowledge of the falsity of her representation regarding the invoices submitted to HSUSA on Thomas Paige letterhead.  The emails Mrs. Estrin forwarded to Mr. Estrin contained information concerning candidates who applied directly to HSUSA for open positions. Mrs. Estrin later approved invoices submitted by Thomas Paige for recruiting commissions for those same candidates.[99]  The March 16, 2010 email exchange between Mrs. Estrin and Mr. Estrin, described above, indicates that Mrs. Estrin was aware that the recruiting services for which invoices were submitted on Thomas Paige letterhead were not actually performed by Thomas Paige.  At the time Mrs. Estrin's misrepresentations were made to HSUSA, she knew those representations were false.  The second element required under section 523(a)(2)(A) is met as to Mrs. Estrin.

---

[99] *See* Exhibit 121, documenting the investigation into Mrs. Estrin's conduct performed by HSUSA.

The second element is also met as to Mr. Estrin.  Because Mr. Estrin was the person actually engaging in recruiting activities and subsequently submitting the invoices for recruiting commissions to HSUSA, it is evident that Mr. Estrin knew at the time he submitted the invoices to HSUSA that the recruiting commissions reflected on the invoices were not actually earned by Thomas Paige.  In fact, in correspondence with Mr. Spry regarding the recruitment of Lindy Smiley, Mr. Estrin informed Mr. Spry of the amount of his commission for "moving paper."  The evidence presented establishes that at the time Mr. Estrin misrepresented to HSUSA that recruiting commissions were earned by Thomas Paige, he knew that representation was false.  The second element is met as to both of the Estrins.

c.   Intent to Defraud Plaintiff

In determining whether fraudulent intent existed, the Court must consider the subjective intent of the debtor.  *Lind Waldock & Co.*, 1 F. App'x at 107.  "'Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.'"  *Davis*, 494 B.R. at 868 (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987)); *see also Planters & Growers Golden Leaf Warehouse v. Baird (In re Baird)*, 229 B.R. 361, 363 (Bankr. D.S.C. 1997) ("While the intent to deceive a creditor, within the meaning of the discharge exceptions for debt obtained by false representations may not be presumed, the totality of the circumstances may lead to the inference that the requisite degree of intent to deceive was present.") (citing *Matter of Richmond*, 29 B.R. 555 (Bankr. M.D. Fla. 1983)).

From an examination of the circumstances here, Mrs. Estrin's intent to defraud HSUSA can be inferred.  As set forth above, Mrs. Estrin frequently sent Mr. Estrin log-in information for profiles maintained by HSUSA on online job boards.  Mrs. Estrin also forwarded Mr. Estrin

resumes and other application information for candidates who applied directly to HSUSA for open

positions.  The March 16, 2010 email exchanges regarding the available CFO position at HSUSA,

in which Mrs. Estrin stated to Mr. Estrin that the job posting was "clearly identifiable as <u>us</u>"

(emphasis added) indicates that she was aware of and actively participating in a scheme designed

to deceive HSUSA into paying commissions to Thomas Paige, an entity that did not actually earn

those commissions.  Finally, she endorsed a check made out to Fitzgerald Addison from Thomas

Paige related to one of these transactions.[100]   The evidence presented by Plaintiff is sufficient to

establish the inference that Mrs. Estrin intended to defraud HSUSA in her misrepresentations.

The evidence also establishes that Mr. Estrin had the requisite intent.  Mr. Estrin received

information regarding open positions and candidates from Mrs. Estrin, then, using several different

false names, posed as a recruiter and communicated with the candidates who, in many cases, had

initially applied directly to HSUSA.  Once HSUSA hired a candidate, Mr. Estrin posed as Thomas

Paige and submitted an invoice to HSUSA on Thomas Paige letterhead to induce payment from

HSUSA from which he would ultimately benefit. The fact that Mr. Estrin engaged in recruiting

activities which were unnecessary because the candidates had already applied to HSUSA directly,

and the fact that he took these steps to hide from HSUSA the identity of the individual requesting

payment of recruiting commissions, indicate that Mr. Estrin intended to defraud HSUSA.  This

element is met as to both of the Estrins.

d.  <u>Justifiable Reliance</u>

Evaluation of the justifiable reliance element of the section 523(a)(2)(A) test requires a

two-step inquiry: "'first, whether [the plaintiff] actually relied upon the misrepresentation, and

---

[100] Exhibit 110 contains a check for $13,000 endorsed by Mrs. Estrin. On the line next to the "for" portion of the check is written "16250." Mr. Spry testified that this check was a disbursement made by Thomas Paige to Fitzgerald Addison for a placement. Dep. Spry 76:3 – 77:3, September 22, 2015.

second, whether the reliance was justifiable.'" *Godowns v. Brush (In re Brush)*, 460 B.R. 448, 457 (Bankr. D.S.C. 2011) (quoting *Lilly v. Harris*, No. Civ.A. 5:04 CV 00017, 2004 WL 1946378, at *2 (W.D. Va. Sept. 1, 2004)) (alteration original).  The second step of the two-prong test requires justifiable, not reasonable, reliance.  *MBNA Am. v. Simos (In re Simos)*, 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997) (citing *Field v. Mans*, 516 U.S. 59, 73 (1995)). Determining whether the plaintiff actually relied on the misrepresentation is a factual finding; however, in evaluating whether the reliance was justified, "the court must use a subjective standard and examine '"the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case. . . .""" *Brush*, 460 B.R. at 457 (quoting *Lilly*, 2004 WL 1946378, at *2, *3).  While justifiable reliance is a "minimal" standard, the plaintiff must use his sensibilities, and will not recover if he blindly relied on a misrepresentation which a cursory examination would have revealed was false.  *Id.* (citing *Lilly*, 2004 WL 1946378, at *2, *3).

In this case, HSUSA actually relied on both Mr. and Mrs. Estrin.  HSUSA relied on Mrs. Estrin to properly spend the recruiting budget for legitimate recruiting activities in a manner that best served HSUSA.  This included relying on Mrs. Estrin to pay only those recruiting commissions that were necessary and actually earned.  When Mr. Estrin submitted invoices for recruiting commissions on Thomas Paige letterhead, HSUSA relied, in paying those commissions, on both Mr. and Mrs. Estrin's representations that those commissions were actually earned.  Actual reliance exists here.

HSUSA's reliance was also justifiable.  Mrs. Estrin began working for HSUSA in August 2008 as an independent contractor and was subsequently offered permanent employment with HSUSA.  When Mrs. Estrin applied for her position at HSUSA, she completed a job application which indicated Mrs. Estrin had previous experience in several different human resources roles.

Mrs. Estrin also represented to HSUSA, both in her application and in subsequent disclosure forms, that she did not have any interest in any company that was doing business or sought to do business with HSUSA, which could potentially give rise to a conflict of interest.  HSUSA was justified in entrusting Mrs. Estrin with a recruiting budget, allowing her to expend money for its benefit, and relying on her to use her human resources expertise in a manner that would maximize benefit to HSUSA.

As to Mr. Estrin, HSUSA was justified in relying on the invoices submitted.  Candidates were ultimately placed in open positions at HSUSA.  Because HSUSA sometimes used outside recruiters to assist it in filling open positions, HSUSA had no reason to believe that the recruiting commissions on the invoices submitted for those placed candidates were not actually earned.  The justifiable reliance element of section 523(a)(2)(A) is met.

e.  Damages

As a result of Mr. and Mrs. Estrin's conduct, HSUSA suffered damages.  Plaintiff's counsel proffered that the total amount of damages incurred by Plaintiff, including interest and attorneys' fees, is $581,549.31.[101]  Over the course of the scheme perpetrated by the Estrins, HSUSA paid sums of over $150,000.00 to Thomas Paige for recruiting commissions that were not actually earned.  HSUSA also incurred significant expense in investigating the Estrins' conduct.  Pursuant to the policy of insurance, Plaintiff paid HSUSA a total of $97,970.77 to compensate for the losses HSUSA sustained.  Plaintiff suffered damages as a result of the Estrins' conduct, and the final element under section 523(a)(2)(A) is met.

---

[101] Because the Court was not deciding the amount of damages, no evidence of the total loss was actually presented at trial.

f.  <u>False Pretenses and Actual Fraud</u>

In addition to false representations, section 523(a)(2)(A)'s express language excepts from discharge "false pretenses" and instances of "actual fraud."  The Court notes that Mr. Estrin's conduct also constitutes a false pretense.  A false pretense is "'an implied misrepresentation or "conduct intended to create and foster a false impression."'"  *Davis*, 494 B.R. at 871-72 (quoting *Nat'l Bank of N. Am. v. Newmark (In re Newmark)*, 20 B.R. 842, 854 (Bankr. E.D.N.Y. 1982)).  Mr. Estrin's conduct in submitting invoices to HSUSA on Thomas Paige letterhead, in order to create the impression that recruiting services were provided by Thomas Paige and to induce HSUSA to pay those recruiting commissions, falls well within this definition.

Courts are split on whether "actual fraud" under this subsection of section 523 can be established in the absence of a misrepresentation.  The Fifth Circuit has found that "a representation is a necessary prerequisite for a showing of 'actual fraud' under Section 523(a)(2)(A),"[102] while the Seventh Circuit has held that a misrepresentation is not required for a debt to be nondischargeable under section 523(a)(2)(A).  *McClellan v. Cantrell*, 217 F.3d 890, 892-93 (7th Cir. 2000).  The First Circuit and the Bankruptcy Appellate Panels for the Sixth Circuit and the Tenth Circuit have agreed with the Seventh Circuit.  *See Sauer, Inc. v. Lawson (In re Lawson)*, 791 F.3d 214, 220 (1st Cir. 2015) ("We . . . hold that 'actual fraud' under § 523(a)(2)(A) is not limited to fraud effected by misrepresentation."); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("We adopt the position of the Court of Appeals for the Seventh Circuit that actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions."); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 691 (B.A.P. 10th Cir. 2013) ("We agree with the reasoning of the *McClellan* and *Vitanovich*

---

[102] *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 787 F.3d 312, 321 (5th Cir. 2015).

24

courts.  In order to give full effect to the plain meaning of the disjunctive 'or' in § 523(a)(2)(A), we conclude that 'actual fraud' is an independent basis for nondischargeability under that subsection.").  The Fourth Circuit has not ruled on this issue.  The United States Supreme Court has recently granted certiorari to resolve this conflict.

To the extent that "actual fraud" is a separate basis for non-dischargeability of a debt under section 523(a)(2)(A), Mr. and Mrs. Estrin's conduct also constitutes actual fraud. The Seventh Circuit has stated:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth.  No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*McClellan*, 217 F.3d at 893 (quoting *Stapleton v. Holt*, 207 Okla. 443, 250 P.2d 451, 453-54 (Okla. 1952)).  Mr. Estrin initiated and facilitated a scheme by which he obtained information regarding candidates from his wife, improperly used that information to contact the candidates using false recruiter names, and posed as Thomas Paige in submitting invoices for recruiting commissions that were not actually earned, all in order to ultimately wrongfully obtain funds from HSUSA. Mrs. Estrin actively participated in the scheme. The Estrins' conduct in perpetrating this scheme was knowing and willful, and constitutes actual fraud for purposes of section 523(a)(2)(A).

All of the elements of section 523(a)(2)(A) are satisfied.  The debt is non-dischargeable as to both of the Estrins pursuant to section 523(a)(2)(A).

### 3.  Section 523(a)(4)[103]

Section 523(a)(4) provides that a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge.  "'Embezzlement is generally defined under federal law as "the fraudulent appropriation of property by a person to whom such property has been intrusted [sic] or into whose hands it has lawfully come."' . . . "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Davis*, 494 B.R. at 875-76 (internal citations omitted).  *See also O'Connor v. Booker (In re Booker)*, 165 B.R. 164, 171 (Bankr. M.D.N.C. 1994) (quoting *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991)) ("Under federal law, embezzlement requires three elements: '"(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud."'"); *Orumwense-Lawrence v. Osula (In re Osula)*, 519 B.R. 361, 379 (Bankr. D. Mass. 2014) ("'[U]sing entrusted money for the recipient's own purposes in a way he knows the entrustor did not intend or authorize' constitutes embezzlement. 'It is knowledge that the use is devoid of authorization, . . . that makes the conversion fraudulent and thus embezzlement.'") (internal citations omitted).

Plaintiff has established the required elements for embezzlement pursuant to section 523(a)(4).  With respect to the first element, entrustment of property, Mrs. Estrin was entrusted with a recruiting budget and had broad discretion as to how to use the funds.  This discretion included determining whether to use external resources to locate candidates to fill job openings. While her discretion regarding the budget was subject to oversight, that oversight was limited to

---

[103] Plaintiff's cause of action for embezzlement pursuant to section 523(a)(4) is as to Deborah Estrin only.

ensuring that spending on recruiting did not exceed a certain amount.  Allocation of the budget

was solely under Mrs. Estrin's control.  Mrs. Estrin was entrusted with property, and the first

element is met.

The second element, appropriation of property for use other than that for which it was

entrusted, is also met. HSUSA entrusted Mrs. Estrin with complete control over the recruiting

budget with the expectation that she would use that budget to recruit candidates to fill open

positions and would allocate funds to using external recruiting sources when necessary.  Instead,

Mrs. Estrin improperly diverted funds to her ultimate personal gain.  Rather than acting on resumes

sent directly to her through online job boards paid for by HSUSA, she forwarded that information

to Mr. Estrin so that he could "earn" a commission from placement of those candidates. Mrs. Estrin

ultimately benefitted from these payments as a result of her interest in Fitzgerald Addison. Mrs.

Estrin used the budget with which she was entrusted for a purpose other than that intended by

HSUSA, and therefore the second element is met.

Finally, the circumstances here indicate fraud.  As set forth above, Mrs. Estrin failed to

disclose to HSUSA her interest in Fitzgerald Addison, the entity she owned that received a large

share of the unearned recruiting commissions.  Several emails were sent by Mrs. Estrin to Mr.

Estrin providing log-in information to profiles on online job boards which were paid for and

maintained by HSUSA.  Invoices submitted to HSUSA on Thomas Paige letterhead were approved

for payment by Mrs. Estrin.  Mrs. Estrin endorsed at least one of the checks from Thomas Paige

to Fitzgerald Addison. Email exchanges between Mrs. Estrin and Mr. Estrin on March 16, 2010

indicate that Mrs. Estrin was fully aware that Mr. Estrin was using names such as "Victor Vega"

and "Scott Johnson" to recruit candidates for open positions at HSUSA.  In fact, her statement

"clearly identifiable as _us_" (emphasis added) indicates that she was actively involved in the

scheme.  Plaintiff has established all three elements necessary to prove embezzlement under section 523(a)(4).[104]  The debt is non-dischargeable as to Mrs. Estrin.

In their answer to Plaintiff's adversary complaint, the Estrins, in response to Plaintiff's section 523(a)(4) causes of action, assert two defenses:  first, that the causes of action were not asserted in the California Action and therefore cannot be added in this adversary proceeding, and second, that the statute of limitations on the causes of action has run.  Neither of these defenses defeats the embezzlement cause of action.

The fact that the causes of action were not asserted in the California Action does not preclude them from being asserted in this adversary proceeding.  A cause of action for dischargeability of a debt is a separate and distinct cause of action from a cause of action on the debt itself.  *Brockenbrough v. Taylor (In re Taylor)*, 54 B.R. 515, 517 (Bankr. E.D. Va. 1985) (quoting 3 Collier on Bankruptcy ¶ 523.11, at 523—75, n.9 (15th ed. 1985)).  In fact, as other courts have previously recognized, a cause of action under section 523(a) did not exist and therefore could not have been brought against the Estrins prior to their bankruptcy filing.  *See Taylor*, 54 B.R. at 518; *Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 495, 496 (Bankr. S.D. Ohio 1993) (stating, "[T]here is no requirement that the allegations of a complaint filed in state court prior to a debtor filing a petition in bankruptcy correspond to the elements of the grounds contained in § 523(a) of the Bankruptcy Code.").  A litigant is not required to plead every conceivable cause of action in anticipation that a bankruptcy may be filed at a later date.  *See Brown v. Felsen*, 442 U.S. 127, 138 (1979) ("[T]he bankruptcy court is not confined to a review

---

[104] Plaintiff's complaint also contained a cause of action as to Mrs. Estrin pursuant to section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.  However, because Plaintiff has already established that the debt is non-dischargeable as to Mrs. Estrin under section 523(a)(4) for embezzlement, it is unnecessary for the Court to consider this additional section 523(a)(4) exception.

of the judgment and record in the prior state-court proceedings when considering the dischargeability of [a] debt.").  Thus, Plaintiff is entitled to proceed on its section 523(a)(4) causes of action even though embezzlement was not asserted in the California Action.

The Estrins' statute of limitations defense fails for similar reasons.  Again, because a cause of action for dischargeability of a debt is a separate and distinct action from a cause of action on the debt itself, courts have found that as long as a creditor has sought to enforce their debt against the debtor within the period prescribed by the relevant statute of limitations, once a bankruptcy case is filed, the creditor may proceed on timely filed causes of action relating to the dischargeability of the debt.  *See Moran*, 152 B.R. at 495 (considering Ohio statute of limitations, stating, "The only relevant question with respect to Ohio's statute of limitations is whether the plaintiffs sought to *enforce* their *"debt"* against the debtor within the period prescribed by the statute of limitations. . . . In the instant adversary proceeding, the *nature* of the alleged debt, i.e., whether the debt is of a type determined by Congress to be nondischargeable, is to be decided by this court."); *Ullman v. Boyer (In re Boyer)*, Adv. No. 98-3112, C/A No. 98-34241S, 1999 WL 33954735, at *7 (E.D. Va. Aug. 24, 1999) ("[T]here are two distinct issues in a dischargeability proceeding.  The first, which is the establishment of the debt itself, is governed by the applicable state statute of limitations:  if a suit is not brought within the time period allotted under state law, the debt cannot be established.  The only relevant question with respect to the state statute of limitations is whether the plaintiffs sought to enforce their debt against the debtor within the period prescribed by the statute of limitations.  The second, the question of the dischargeability of the debt under the Code, is a distinct issue governed solely by the limitations periods established by bankruptcy law, specifically Bankruptcy Rule 4007.").

Here, the California Action was commenced on July 12, 2013, less than three years after Mrs. Estrin was terminated by HSUSA as a result of her conduct. The relevant California statute of limitations is three years for the conspiracy to commit fraud and fraud causes of action[105] and four years for the unfair business practice cause of action.[106] Plaintiff sought to enforce its debt against the Estrins prior to the expiration of these relevant statutes of limitation. The Estrins' defenses to the section 523(a)(4) causes of action fail. The debt is non-dischargeable as to Mrs. Estrin pursuant to section 523(a)(4).

### 4. Section 523(a)(6)[107]

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." For purposes of section 523(a)(6), "'[w]illful' requires deliberate or intentional acts, while 'malicious' refers to acts that are 'wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will.'" *Brannon v. Reynolds (In re Reynolds)*, 543 B.R. 236, 244 (Bankr. S.D. W.Va. 2015) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). *See also Davis*, 494 B.R. at 876 (quoting *Thompson v. Myers (In re Myers)*, 235 B.R. 838, 842 (Bankr. D.S.C. 1998)) ("'An act is "malicious" within the meaning of § 523(a)(6) if wrongful and without just cause or excuse.'"). Furthermore, "it is the debtor's subjective state of mind that is relevant," and malice can be found

---

[105] "In an action based on civil conspiracy, the applicable statute of limitations is determined by the nature of the action in which the conspiracy is alleged." *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 673 (Cal. Ct. App. 1988). A fraud claim is subject to a three-year limitations period under California law. *Yamauchi v. Cotterman*, 84 F. Supp.3d 993, 1010 (N.D. Ca. 2015) (citing Cal. Civ. Proc. Code § 338(d)).

[106] *Betz v. Trainer Wortham & Co., Inc.*, 236 F. App'x 253, 256 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code § 17208).

[107] The Estrins' answer to the complaint also contains a response to this cause of action which states, "Defendants' [sic] vehemently deny that they committed fraud or demonstrated any willful and malicious conduct with regard to HSUSA and/or Twin City. No proof has been offered other than Plaintiff's suppositions and innuendo." The Court finds no valid defense within this statement. As set forth in this Order, the evidence presented by Plaintiff is sufficient to establish the causes of action asserted in Plaintiff's complaint.

implicitly through the "acts and conduct of the debtor in the context of [the] surrounding circumstances." *First Nat'l Bank of Maryland v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir. 1995) (citations omitted) (alteration original).

Courts have often found that conversion constitutes a willful and malicious injury for purposes of section 523(a)(6). *See Internet Auto. Grp. v. Shaffer (In re Shaffer)*, 305 B.R. 771 (Bankr. D.S.C. 2004) (finding that debtor who sold used motor vehicles and failed to remit the proceeds to owner of vehicles committed conversion, which constituted a willful and malicious injury under section 523(a)(6); citing numerous additional cases finding a debtor's conversion of creditor's property to be a willful and malicious injury); *see also Stanley* 66 F.3d at 668 (finding that debtor's "exercise of dominion and control over funds that he knew belonged to another" constituted a willful and malicious injury for purposes of section 523(a)(6)).

Here, Mrs. Estrin appropriated funds of HSUSA that were to be used for recruiting activities by ensuring they were paid to Thomas Paige. Once Mr. Spry took a portion of the funds and remitted the rest to Fitzgerald Addison, she ultimately received the benefit of those funds. Through her knowing participation and facilitation of the scheme initiated by Mr. Estrin, Mrs. Estrin converted funds of HSUSA. The debt is non-dischargeable as to Mrs. Estrin under section 523(a)(6).

Plaintiff has established that the debt is also non-dischargeable as to Mr. Estrin pursuant to section 523(a)(6). The evidence presented establishes that Mr. Estrin knowingly initiated and facilitated the scheme described above with an intent to obtain a personal financial benefit from payments for recruiting commissions made by HSUSA. He did so by using information obtained from Mrs. Estrin in her position at HSUSA, by engaging Mr. Spry to assist him in misrepresenting to HSUSA that Thomas Paige had earned recruiting commissions in placing candidates at HSUSA,

by using false names to pose as a recruiter to candidates seeking jobs with HSUSA, and in submitting invoices on Thomas Paige letterhead to HSUSA in furtherance of the scheme. These deliberate actions by Mr. Estrin caused injury to HSUSA, and Plaintiff is subrogated to the rights of HSUSA. Mr. and Mrs. Estrin intended the specific injury, the taking of money belonging to HSUSA. The debt is non-dischargeable under section 523(a)(6) as to both Mr. and Mrs. Estrin.

## CONCLUSION

For the reasons set forth above, the Court finds, as to Mrs. Estrin, Plaintiff has satisfied all the elements of section 523(a)(2)(A), (a)(4), and (a)(6). As to Mr. Estrin, Plaintiff has satisfied all the elements of section 523(a)(2)(A) and 523(a)(6). Any debt owing from Mr. and Mrs. Estrin to Plaintiff as a result of the conduct noted in this Order is excepted from the chapter 7 discharge.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**02/19/2016**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 02/19/2016